# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **RACHEL L. BRYANT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **Civil Action No.** |
| **CAROLYN W. COLVIN** ) | **5:12-CV-02868-MHH** |
| **Acting Commissioner of the** ) | |
| **Social Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Rachel L. Bryant commenced this action on August 31, 2012, pursuant to 42 U.S.C. § 405(g).  She seeks judicial review of a final adverse decision of the Commissioner of Social Security,[1] affirming the decision of the Administrative Law Judge who denied her claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  For the reasons stated below, the Court **AFFIRMS** the Commissioner's ruling.  (Doc. 1).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

**STANDARD OF REVIEW**:

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and her 'legal conclusions with close scrutiny.'" *Riggs v. Social Sec. Admin., Com'r*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the findings of the Commissioner. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Commissioner of Social Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## RELEVANT FACTS:

On February 28, 2008, Mrs. Bryant applied for a period of disability and disability insurance benefits.  (Doc. 6-6, pp. 31-33).  Mrs. Bryant filed an application for disability insurance benefits under Title II of the Social Security Act and an application for supplemental security income benefits under Title XVI (Doc. 6-3, p. 49).

The Social Security Administration denied Mrs. Bryant's application on May 30, 2008.  (Doc. 6-5, pp. 4-13).  At Mrs. Bryant's request, on April 14, 2010, an Administrative Law Judge conducted a hearing concerning Mrs. Bryant's application.  (Doc. 6-3, pp. 64-85).  Mrs. Bryant testified at a hearing in the presence of an impartial vocational expert.  (Doc. 6-3, pp. 64-85).  At the time of her hearing, Mrs. Bryant was 33 years old.[2]  Mrs. Bryant has completed the eleventh grade. (Doc. 6-3, p. 70).  Her past relevant work experience is as a hotel breakfast room attendant, a hotel receptionist, and a thrift store sales clerk. (Doc. 6-3, pp. 70-71).

---

[2] At 33 years of age, 20 C.F.R. §§404.1563(c) and 416.963(c) designate Mrs. Bryant as a "younger person."  (Doc. 6-3, p. 69).

On July 19, 2010, the ALJ denied Mrs. Bryant's request for disability benefits, concluding that Mrs. Bryant did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations. (Doc. 6-3, p. 52). In her ten page decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled" and explained that "[i]f it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step." (Doc. 6-3, p. 50).

The ALJ found that Mrs. Bryant had not "engaged in substantial gainful activity since February 13, 2008, the alleged onset date." (Doc. 6-3, p. 51). In addition, the ALJ concluded that Mrs. Bryant had "the following severe impairments: obesity, depressive disorder and anxiety disorder." (Doc. 6-3, p. 51). The judge stated, "the above impairments impose more than a minimal functional limitation on [Mrs. Bryant]'s ability to do basic work activity." (Doc. 6-3, p. 52).[3] Still, concerning Mrs. Bryant's mental impairments, the judge opined:

---

[3] In contrast, the ALJ found that Mrs. Bryant's impairments of cellulitis, migraine headaches, depersonalization disorder, and obsessive compulsive disorder ("OCD") were non-severe. (Doc. 6-3, p. 52). The ALJ found that "[Mrs. Bryant]'s cellulitis lack[ed] any appreciable durational qualities." *Id.* Concerning Mrs. Bryant's migraine headaches, the ALJ found "no evidence that her migraines were regular or as severe as…stated…during her hearing." *Id.* The ALJ noted that depersonalization disorder was neither mentioned by the Good Samaritan Health Clinic nor a recurrent mental problem. *Id.* With respect to OCD, the ALJ noted that Mrs. Bryant had "no actual and supported diagnosis of OCD," and a consultative examiner found that Mrs. Bryant merely suffered from obsessive-compulsive traits as opposed to being obsessive-compulsive. *Id.*

4

> [Mrs. Bryant]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living ("ADLs"); marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within [one] year, or an average of once every [four] months, each lasting for at least [two] weeks."

(Doc. 6-3, p. 53).

The ALJ found that Mrs. Bryant's ADLs were mildly restricted. (Doc. 6-3, p. 53). Though Mrs. Bryant noted she was too exhausted to cook, medical doctors "observed that [Mrs. Bryant]…perform[s] her chores and ADLs without assistance" and that "her depression was 'stable.'" *Id*.

The ALJ found mild difficulties in Mrs. Bryant's social functioning. (Doc. 6-3, p. 53). Mrs. Bryant's doctor noted that "[she] had 'dysfunctional family dynamics' that while suggestive of problems with social functioning, is not irrefutable proof of marked difficulty with them." *Id*. Further, Mrs. Bryant admitted to working with tired and angry people at work on a regular basis. *Id*. The ALJ pointed out that, "when tested in a work situation, [Mrs. Bryant] was able

5

to successfully deal with tired and angry people full-time and for a sustained basis." *Id.*

The ALJ determined that Mrs. Bryant had moderate difficulties in the area of concentration, persistence or pace. (Doc. 6-3, p. 53). The ALJ noted Mrs. Bryant's statements that she has difficulty remembering what she reads, that her mind wanders while driving, and that she has difficulty concentrating while driving; however, the ALJ also noted that Mrs. Bryant regularly uses a Wii Fit and does yoga, "[b]oth activities [that] require a certain amount of concentration that would be inconsistent with a marked difficulty with attention and persistence." *Id.* As for decompensation, Mrs. Bryant has not alleged, nor has there been evidence of, any episodes for any duration. (Doc. 6-3, p. 53).

In sum, the ALJ found that the "paragraph B" criteria had not been met because Mrs. Bryant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration. *Id.*

In addition to considering the criteria set out in "paragraph B" of the listings, the ALJ also looked at the "paragraph C" criteria. (Doc. 6-3, p. 54). The judge found that there is no "evidence of residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or

6

change in the environment would be predicted to cause [Mrs. Bryant] to decompensate." *Id.* From working full-time as a hotel clerk to caring for her children with little trouble, neither her past nor current history suggests that Mrs. Bryant has experienced the inability to function outside a supportive living arrangement for one or more years. *Id.* There is also no evidence that Mrs. Bryant's anxiety has ever or would produce an inability to function outside of her home. *Id.*

There is no listing for obesity, but an individual with obesity may meet the criteria of a listing when combined with another impairment. (Doc. 6-3, p. 54). Though the ALJ evaluated Mrs. Bryant's obesity in combination with other possible impairments, she concluded that "[Mrs. Bryant]'s condition does not equal the level of severity contemplated for any listing section in Appendix 1." (Doc. 6-3, p. 55).

Based on these factual findings, the ALJ concluded that Mrs. Bryant had the "residual functional capacity [("RFC")] to perform sedentary work . . . except that [she] can understand, carry out and remember the requirements of unskilled work on a regular and continuing basis." (Doc. 6-3, p. 55). The ALJ also noted that Mrs. Bryant's treating source, "[Ms. Carol Livingston, C.R.N.P.], is not an acceptable medical source," despite having provided Mrs. Bryant with medical care. (Doc. 6-3, p. 57). The ALJ acknowledged Ms. Livingston's opinion that

7

"work would be detrimental to [Mrs. Bryant] and her family," but also stated that this medical opinion "is not supported by the records from [the] Good Samaritan [Health Clinic]."[4]  (Doc. 6-3, p. 57).  The ALJ added that, "[the opinion about the impact on Mrs. Bryant's family] is not indicative of [Mrs. Bryant]'s ability or loss of ability to work."  (Doc. 6-3, p. 57).  Consequently, the ALJ afforded little weight to Ms. Livingston's opinion.  (Doc. 6-3, p. 57).

The ALJ gave little weight to the medical opinion evidence from Mental Healthcare of Cullman, Alabama, Alabama Psychiatric Services, Cullman Primary Care, P.C., and Cullman Regional Medical Center.  (Doc. 6-3, p. 56).  The ALJ reasoned that because these opinions were rendered five years before Mrs. Bryant's alleged onset date of February 13, 2008 (Doc. 6-3, p. 51), the opinions were too remote to offer much insight into Mrs. Bryant's disability claim.  (Doc. 6-3, p. 56).  In addition, the ALJ noted that Mrs. Bryant continued to work while receiving treatment at these locations.  (Doc. 6-3, p. 56); *see* (Doc. 6-8, p. 2).

Mrs. Bryant underwent a consultative examination at the request of the state.  (Doc. 6-3, p. 57).  Although the ALJ stated that this examination was not completely supported by the medical evidence, she noted that it contained "valuable information concerning [Mrs. Bryant]'s actual abilities and level of

---

[4] In fact, the records from the Good Samaritan Health Clinic do not indicate that work would be detrimental to Mrs. Bryant and her family.  (Doc. 6-10, pp. 26-59).

functioning that are not found anywhere else in the medical evidence." Therefore, the ALJ gave this medical opinion some weight as it regards ADLs, exercise regimen, self-care, and hobbies. (Doc. 6-3, p. 57).

The ALJ gave some weight to the medical evidence from the Good Samaritan Health Clinic, with the exception of Ms. Livingston's medical opinion. (Doc. 6-3, p. 57). The ALJ explained that the clinic's medical personnel treated Mrs. Bryant regularly for an extended period of time and accurately reported the details of Mrs. Bryant's alleged symptoms. (Doc. 6-3, p. 57).

The ALJ concluded that her RFC assessment "is supported by the consultative examiner, [Mrs. Bryant]'s testimony and the majority of the treatment notes from the Good Samaritan Health Clinic." (Doc. 6-3, p. 57). The ALJ decided that Mrs. Bryant "is not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act." (Doc. 6-3, p. 58). Regarding Mrs. Bryant's application for supplemental security income filed on February 28, 2008, the ALJ found that Mrs. Bryant is not disabled under § 1614(a)(3)(A) of the Social Security Act. (Doc. 6-3, p. 58).

The ALJ determined that Mrs. Bryant retained the RFC to perform work-related activities at the sedentary level, and that there would be jobs in the national economy that would accommodate her limitations, though she is unable to perform past relevant work. (Doc. 6-3, p. 57). On May 24, 2012, this became the final

decision of the Commissioner when the Appeals Council refused to review the ALJ's decision. (Doc. 6-3, p. 25). Having exhausted all administrative remedies, Mrs. Bryant filed this action for judicial review in Federal Court pursuant to §205(g) and §1631(c)(3) of the Social Security Act, 42 U.S.C. §405(g). (Doc. 1, p. 1).

## **ANALYSIS**:

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987). If the claimant is successful, then the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

Mrs. Bryant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. (Doc. 1, p. 2). Specifically, Mrs. Bryant asserts that the ALJ improperly considered the opinion of her treating physician (Doc. 10, pp. 7-10) and failed to properly consider impairments beyond the second step of the five-step evaluation process. (Doc. 10, pp. 10-14). Upon review of the record, the Court finds that these contentions are without merit.

### A. Ms. Livingston's Medical Opinion

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. Additionally, the ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e).

The ALJ found that "[Ms. Livingston] is not an acceptable medical source." (Doc. 6-3, p. 58). The Court agrees. According to § 404.1513(a), Ms. Livingston does not meet the definition of an "acceptable medical source." 20 C.F.R. § 404.1513(a). "Acceptable medical sources" are defined as licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, and in certain situations licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). As a nurse practitioner, Ms. Livingston

falls under the category of "other sources" in § 404.1513(d)(1).[5] As an "other source," Ms. Livingston's medical opinion could be used to show the severity of an impairment but not the presence of an impairment. 20 C.F.R. § 404.1513(d); *see Miles v. Barnhart*, 410 F. Supp. 2d 1113 (N.D. Ala. 2006) (holding that though a mental health therapist was not able to establish the existence of an underlying medical condition, her opinion was relevant to the condition's severity); *see also Reliford v. Barnhart*, 444 F. Supp. 2d 1182 (N.D. Ala. 2006) (once an acceptable medical source determines the existence of a medical impairment, testimony from other sources may be used to show its severity and effect on ability to work). "[O]ther source" opinions are not entitled to controlling weight, a designation that the regulations reserve for "acceptable medical sources." *See infra* at 14-16. Consequently, the ALJ did not err when she refused to give Ms. Livingston's medical opinion controlling weight.

Additionally, despite Mrs. Bryant's argument that "the ALJ reject[ed] the opinion of Ms. Livingston," the ALJ stated only that she afforded Ms. Livingston's opinion "little weight." (Doc. 6-3, p. 57); (Doc. 10, p. 9). The ALJ also discussed the opinions of Ms. Livingston, noting that Ms. Livingston's "theory that work would be detrimental to [Mrs. Bryant] and her family [was] not supported by the

---

[5] Contrary to Mrs. Bryant's argument, (Doc. 10, p. 8), Ms. Livingston is not a treating source. A treating source must be an "acceptable medical source." 20 C.F.R. § 404.1502. As stated, Ms. Livingston is not an acceptable medical source.

records from Good Samaritan [Health Clinic]." (Doc. 6-3, p. 57). The ALJ reasoned that "evidence of a dysfunctional family process…is not indicative of [Mrs. Bryant]'s ability or loss of ability to work." (Doc. 6-3, p. 57). Substantial evidence in the record supports this conclusion.

### B. The Proper Procedure of the Five-Step Evaluation Process

Mrs. Bryant argues that the ALJ erred by failing to properly consider her impairments of migraine headaches and alleged depersonalization disorder beyond the second step of the disability evaluation process. (Doc. 1, p. 10). Mrs. Bryant states that "the ALJ seems to suggest that [she] does not have migraine headaches because she misused her headache medications." (Doc. 10. P. 11). That is not what the ALJ's decision says. The ALJ noted that Mrs. Bryant's allegation of migraine headaches is generally supported by her prescription for Tramadol. (Doc. 6-3, p. 52). But, the ALJ also explained that Mrs. Bryant's doctors reported that Mrs. Bryant was taking Tramadol for every headache, an unacceptable treatment regimen. (Doc. 6-3, p. 52). Because of the misuse of her migraine medication for normal headaches, the ALJ was unable to determine the frequency or severity of Mrs. Bryant's migraine headaches. (Doc. 6-3, p. 51). In addition, Mrs. Bryant testified that her headaches eased with treatment (Doc. 6-3, p. 75), and she went for months at a time without migraines. (Doc. 6-3, p. 75). Given that the record contains no evidence concerning the frequency and severity of the migraines or the

way in which the headaches purportedly limited Mrs. Bryant's ability to work, the ALJ found that Mrs. Bryant's migraine headaches were non-severe. (Doc. 6-3, p. 52). The record supports this conclusion.

With respect to her alleged depersonalization disorder, Mrs. Bryant argues that "the ALJ conclude[d] that [she did] not have the severe impairment of depersonalization disorder because it [was] not documented in the medical records." (Doc. 10, p. 12). This is not an accurate description of the ALJ's decision. The ALJ acknowledged Mrs. Bryant's reports of occasional difficulty in recognizing herself in a mirror. (Doc. 6-3, p. 52). However, the ALJ stated that the records from Good Samaritan Health Clinic do not mention depersonalization disorder.[6] (Doc. 6-3, p. 52). The ALJ also explained that Mrs. Bryant's inability to recognize her own face in a mirror was not a recurrent problem. (Doc. 6-3, p. 51). In addition, the ALJ found no evidence that Mrs. Bryant's anxiety attacks were attributable to depersonalization disorder. (Doc. 6-3, p. 51). Consequently, the ALJ considered Mrs. Bryant's alleged depersonalization disorder a non-severe impairment. (Doc. 6-3, p. 52).

---

[6] There appear to be two locations in the Good Samaritan Health Clinic records that indicate a possible problem with depersonalization disorder. (Doc. 6-10, pp. 39, 40). In both records, the term "depersonalization disorder" appears under the "chief complaint" section of the evaluation, but the disorder does not appear under the "impressions" section. Additionally, on page 39 of the Good Samaritan record, a question mark appears beside the term "depersonalization disorder." (Doc. 6-10, p. 39).

Mrs. Bryant notes that the ALJ did not specifically mention the consultative examiner's medical opinion about depersonalization disorder in her decision. Viewing the decision as a whole, the absence of the consultative examiner's finding of depersonalization disorder is not error. *See Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 348 n.11 (11th Cir. 2005) (noting that though the ALJ did not mention the claimant's obesity, there is no rigid requirement that every piece of evidence be mentioned as long as the decision allows the court to conclude that the claimant's condition was considered as a whole); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (noting that the ALJ is not required to specifically refer to every piece of evidence as long as the court can conclude that the claimant's condition was considered as a whole).

Finally, Mrs. Bryant argues that the ALJ did not consider her non-severe impairments—migraine headaches and alleged depersonalization disorder—in making the RFC assessment. When making an RFC assessment, an ALJ must consider all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). The assessment should include "all . . . medically determinable impairments . . . including [those] that are not 'severe.'" 20 C.F.R. § 404.1545(a)(2). Mrs. Bryant assumes that because those non-severe impairments were not discussed in the RFC section that the ALJ did not consider them. That assumption is misplaced. The

ALJ considered the record as a whole in making her RFC assessment, which met the requirements of 20 C.F.R. § 404.1545(a)(1).

An ALJ must consider all impairments in making an RFC assessment, but that does not mean she is required to list each one in her final opinion. "An ALJ is not required to refer specifically to each piece of evidence in the record, but must sufficiently explain the weight given to 'obviously probative exhibits.'" *Cooper v. Comm. of Social Sec.*, 521 Fed. Appx. 803, 808 (11th Cir. 2013) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Thus, although the ALJ must *consider* all impairments in her RFC assessment, she need not specifically mention each impairment. *See Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 348 n.11 (11th Cir. 2005) (no rigid requirement that every piece of evidence be mentioned as long as the decision allows the court to conclude that the claimant's condition was considered as a whole); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (noting that the ALJ is not required to specifically refer to every piece of evidence as long as the court can conclude that the claimant's condition was considered as a whole).

The ALJ's decision, taken as a whole, indicates that the ALJ considered all of Mrs. Bryant's impairments in the RFC analysis. While the ALJ did not analyze the two non-severe impairments extensively in the RFC analysis, the ALJ was not required to do so. The ALJ affirmatively stated in her decision that she

"careful[lly] consider[ed] the entire record" in determining Mrs. Bryant's RFC. (Doc. 6-3, p. 54). Thus, the ALJ recognized her obligation to "consider all of the claimant's impairments, including impairments that are not severe." (Doc. 6-3, p. 49). The ALJ analyzed the evidence of migraine headaches and potential depersonalization disorder in step two of the analysis. (Doc. 6-3, p. 51). In the RFC analysis, the ALJ also cross-referenced her decision to give the testimony of Carol Livingston and other professionals at Good Samaritan little weight and some weight, respectively.[7] This also suggests that the ALJ considered all of Ms. Bryant's impairments at the RFC stage because those sources offered some evidence of Mrs. Bryant's migraines. Furthermore, it is not surprising that the ALJ declined to focus on non-severe impairments at the RFC stage. The ALJ's determination that Mrs. Bryant's migraine headaches and alleged depersonalization disorder were non-severe was supported by substantial evidence and discussed thoroughly earlier in the decision. (Doc. 6-3, pp. 51-53).

Finally, the fact that the ALJ found at the RFC stage that Mrs. Bryant does not have the capacity to perform her past work indicates that the ALJ considered all of the medical evidence on the record. The very purpose of the RFC stage is to

---

[7] In the second step of the evaluation process, the ALJ discussed both Mrs. Bryant's migraine headaches and alleged depersonalization disorder. (Doc. 6-3, p. 52). There, the ALJ explained her reasons for finding those impairments were non-severe. *Id.* In the RFC analysis discussion, the ALJ then noted that the opinion of the main proponent of depersonalization disorder, the consultative examiner, was given only some weight. (Doc. 6-3, p. 57). Similarly, the opinion of the main proponent for Mrs. Bryant's migraines, Ms. Livingston, was given little weight. *Id.*

17

determine whether the claimant has capacity for any kind of work, and the ALJ found that Mrs. Bryant indeed suffers from her disorders to such an extent that she is unable to perform her past work. In conclusion, the absence of specific discussion about migraine headaches and depersonalization disorder in the RFC assessment section is not error. The ALJ's decision is supported by substantial evidence in the record.

**CONCLUSION**:

Substantial evidence supports the ALJ's decision in this case, and the ALJ employed the proper legal standards to come to her decision. This Court will not re-weigh the evidence or substitute its judgment for the judgment of the Commissioner. Accordingly, the decision of the Commissioner is AFFIRMED.

**DONE** and **ORDERED** this August 29, 2014.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE